**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MID-ATLANTIC NEPHROLOGY         :
    ASSOCIATES, P.A.           :
v.                              :
                                :  Civil No. WMN-05-0143
COMPANION TECHNOLOGIES          :
    CORPORATION OF             :
    NORTH CAROLINA             :

**MEMORANDUM**

Before the Court are Defendant's Motion to Compel Arbitration and to Dismiss, Paper No. 6, and Plaintiff's Motion to Stay Arbitration, Paper No. 7. Both motions are ripe for decision. Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendant's motion will be granted in part and denied in part, and Plaintiff's motion will be denied.

Plaintiff is a Maryland professional medical services corporation. Defendant is a South Carolina corporation, with its principal place of business in Durham, North Carolina. Defendant sells computer hardware, software, and supporting services. On August 31, 2001, Plaintiff and Defendant entered into an Agreement under which Defendant agreed to provide the hardware, software, installation, and training related to a patient billing and office management program. Plaintiff

agreed to pay $70,000 as a down payment for the system with an additional $180,000 due upon completion of the installation.

The Agreement, which was about three and a half pages in length, contained the following clauses:

> **Section 5 - Disputes**
>
> **5.1 Arbitration**.  Except as otherwise expressly provided in this agreement, all claims, controversies or disputes arising out or related to this Agreement, or any breach thereof, shall be resolved by binding arbitration in Columbia, South Carolina as provided herein and otherwise in accordance with the Commercial Arbitration rules of the American Arbitration Association.  Where the amount in controversy is less than $100,000.00, the dispute shall be submitted to a single arbitrator.  Otherwise the dispute shall be submitted to a panel of three arbitrators.  The arbitrator(s) shall strictly enforce all provisions of this Agreement except to the extent applicable laws require otherwise.  The arbitrator(s) shall have no authority to grant either Party punitive, exemplary, consequential or other special damages of any kind.  Judgment upon the award of the arbitrator(s) may be entered in any court of competent jurisdiction.
>
> **5.3 Attorneys Fees**.  In any action, proceeding, or arbitration pursuant to Section 5.1 or 5.2, the court or the arbitration panel, as applicable (the "tribunal"), shall award to the prevailing Party all of such Party's cost related to the controversy (including without limitation attorneys' fees and out-of-pocket expenses).  Where each Party prevails in part, the tribunal shall award to each Party that part of its cost which

2

> the tribunal deems allocable to those
> issues as to which such Party prevailed.

Plaintiff alleges that while being trained in the use of the software it became aware that the program did not function properly, did not have the capabilities outlined in the promotional materials upon which Plaintiff relied in ordering the program, and would not be able to satisfy its requirements.  In response to these discoveries, Plaintiff ceased further dealings with Defendant and purchased a program, which it is currently using, from another vendor for approximately $300,000.00.

Plaintiff filed suit in this Court on January 18, 2005, seeking a declaration that the Arbitration, Jurisdiction, and Venue clauses are unconscionable and unenforceable.  Plaintiff also brings claims for recission of the Agreement, negligent misrepresentation, and breach of fiduciary duty.  In response, Defendant filed its motion to dismiss and to compel arbitration, citing the provisions of ¶ 5.1 of the Agreement.[1]

---

[1] As an alternative ground for dismissal, Defendant argues that this Court is not the proper venue for this dispute.  In addition to the arbitration clause, the Agreement contains the following provision:

> **5.2 Jurisdiction and Venue**.  The Parties
> agree that any action or proceeding arising
> out of or related to this Agreement shall
> be instituted only in the federal district
> court in (or closest to) Columbia, South

Defendant also seeks attorneys' fees and costs for defending this action, pursuant to the attorneys' fees provision in the Agreement, ¶ 5.3.

On February 16, 2005, Defendant submitted a Demand for Arbitration to the American Arbitration Association (AAA), seeking the balance due under the Agreement, plus interest, attorneys' fees and costs.  AAA Case No. 31 117 00046 05. Defendant requested that the arbitration take place in Columbia, South Carolina.  Plaintiff has moved before the AAA to dismiss the arbitration, or in the alternative, to stay it pending this Court's determination of the claims brought here.

---

> Carolina.  Each Party consents and submits to the jurisdiction of such court and agrees that venue therein shall be proper and convenient, in any such action or proceeding in such court, each Party waives any right to raise any objection based upon improper venue, action or proceeding, each Party consents to personal jurisdiction of such court and agrees service of process may be effected by United States mail. Notwithstanding the foregoing, the Parties agree to resort to such an action or proceeding only if (the arbitration provision of Section 5.1 is held be to invalid or unavailable, or (2) to enforce such an arbitration award.

Because the Court finds that this dispute is subject to a valid arbitration provision, this provision is not applicable and the Court need not reach the merits of Plaintiff's venue argument.

Although Plaintiff argues before the AAA as it does here that the arbitration clause is unenforceable, Plaintiff states that it would be willing to submit to the arbitration of the dispute if the arbitration were held in Maryland.  See Plaintiff's Motion to Dismiss Arbitration, filed in AAA Case No. 31 117 00046 05 at 5.

In addition to opposing the Defendant's motion to dismiss, Plaintiff filed a motion asking this Court to stay the arbitration.

The Federal Arbitration Act ("FAA"), 9 U.S.C.A. §§ 1-16, represents "a liberal federal policy favoring arbitration agreements," Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).  "Pursuant to th[is] liberal policy, 'any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" O'Neil v. Hilton Head Hosp., 115 F.3d 272, 273-74 (4th Cir. 1997) (quoting Moses H. Cone, 460 U.S. at 24-25). When parties have entered into a valid and enforceable agreement to arbitrate their disputes and the dispute at issue falls within the scope of that agreement, the FAA requires federal courts to compel arbitration in accordance with the

5

agreement's terms, see 9 U.S.C.A. § 4.  The Fourth Circuit has instructed that federal courts should, "whenever possible," enforce agreements to arbitrate.  Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 813 (4th Cir. 1989); see also, Etokie v. Carmax Auto Superstores, Inc., 133 F. Supp. 2d 390, 391 (D. Md. 2000).

Here, the arbitration clause states that it encompasses "all claims, controversies or disputes arising out of or related to this Agreement."  Plaintiff's claim that Defendant's hardware and software did not work as promised in the Agreement goes to the very heart of the Agreement.  Thus, this is clearly a dispute "arising out of" the Agreement, a conclusion that Plaintiff does not seriously dispute.

Instead, Plaintiff asserts that "no valid agreement to arbitrate exists" because the arbitration clause that appears in the Agreement is unconscionable.  Opp. at 3.  Actually, Plaintiff does not appear to believe that it is unconscionable that it submit its claims to arbitration as it indicated that it would be willing to submit to arbitration if the arbitration were in Maryland.  What Plaintiff deems unconscionable is that it would be forced to arbitrate in South Carolina.

The Court finds nothing unconscionable about the arbitration clause and none of the cases cited by Plaintiff

6

teach otherwise.  In several of the cases Plaintiff cites, the courts refused to enforce the arbitration clauses because the court found that the rules and procedures specified in those clauses were "so one-sided that their only possible purpose [was] to undermine the neutrality of the proceeding." <u>Hooters of America, Inc. v. Phillips</u>, 173 F.3d 933, 938 (4th Cir. 1999); <u>see also</u> <u>Murray v. United Food & Commercial Workers Int'l Union</u>, 289 F.3d 297, 304 (4th Cir. 2002) (finding the arbitration procedure "was utterly lacking in the rudiments of even-handedness").  Furthermore, these cases involved instances of vastly unequal bargaining power, pitting individual workers against large employers.  Here, two sizable and sophisticated business entities agreed to arbitrate disputes under the rules of the AAA, rules about which Plaintiff identifies nothing that is improper or unfair aside from the state in which the parties agreed the arbitration would take place.

As to being forced to arbitrate in another state, it is well established that the party opposing arbitration faces a "heavy burden of proof . . . to set aside [a forum selection] clause on the grounds of inconvenience." <u>Carnival Cruise Lines, Inc. v. Shute</u>, 499 U.S. 585, 595 (1991).  To meet the burden, the opposing party must show that "proceedings 'in the contractual forum will be so gravely difficult and inconvenient

7

that [the resisting party] will for all practical purposes be deprived of his day in court.'" Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 12 (1972)). While Plaintiff's pleadings include sweeping generalized claims of "grave inconvenience," "substantial costs," "great expense," and "unfair advantage," Plaintiff cites no specific facts in support of these claims.

As Defendant notes, Columbia, South Carolina is not some distant or remote location.  Other district courts have enforced arbitration provisions that required the litigants to travel equal or greater distances. See, e.g., Bloxom v. Landmark Publ'g Corp., 184 F. Supp. 2d 578 (E.D. Tx. 2002) (Texas citizens compelled to arbitrate claims in Atlanta, Georgia); In re Baily, 217 B.R. 523 (E.D. Tx. 1997) (Texas citizen compelled to arbitrate claims against former employer in Utah, the home state of employer); Mittendorf v. Stone Lumber Co., 874 F. Supp. 292 (D. Ore. 1994)(Oregon citizen compelled to arbitrate claims against former employer in Illinois, the home state of employer); Medika Int'l, Inc. v. Scanlan Int'l, 830 F. Supp. 81 (D. P.R. 1993) (Puerto Rico citizen compelled to arbitrate claims in St. Paul, Minnesota). Of note in these cases, each of the litigants compelled to

8

arbitrate in a distant state were individual litigants who certainly could make a greater claim of prohibitive costs than a sizable, sophisticated business entity such as Plaintiff here.  In Bailey, the plaintiff was in bankruptcy and, yet, the court held that "the mere fact that Debtor/Plaintiff is in bankruptcy is not sufficient to prevent enforcement of a contractual forum selection clause."  217 B.R. at 527.

A decision from the First Circuit issued a little over a month ago, In re Mercurio, 402 F.3d 62 (1st Cir. 2005), is particularly instructive.  In this adversarial proceeding within a bankruptcy case, a Tennessee corporation which manufactures and distributes medical supplies was sued in Rhode Island by the bankruptcy trustee on behalf of one of its former distributors, a Rhode Island corporation.  The Tennessee corporation moved to compel arbitration pursuant to an arbitration clause in the distribution agreement that required all disputes to be arbitrated in Tennessee.  The bankruptcy judge granted the motion to compel arbitration, but ordered that it take place in Rhode Island rather than in Tennessee. Apparently, "the bankruptcy judge felt that there was a need to resolve the case with some celerity, and that sending the matter to Tennessee, for arbitration, where none of the witnesses or evidence was present, would militate against that

9

goal." 402 F.3d at 65. This decision was appealed to the district court which found "that the Trustee would be seriously inconvenienced in litigating in Memphis, Tennessee and effectively deprived of his day in court and thus designated Rhode Island as the place of arbitration." Id. at 66.

The First Circuit reversed, emphasizing that the heavy burden to set aside a forum selection clause

> demands more of a litigant [ ] than simply showing that another location would be more convenient. Were it otherwise, forum selection clauses would almost never be enforceable, for inconvenience to at least one of the parties is an almost forgone conclusion when dealing with a provision that requires litigating away from one's home turf. Yet these clauses are standard fare in today's multi-jurisdictional and international contractual relationships. At the time these contracts are entered into, the parties routinely, voluntarily, and knowingly agree to litigate and/or be bound by the decision of fora located in distant locations. Thus, something considerably more than the mere inconvenience of traveling to litigate in a different, even faraway foreign jurisdiction, is required to overcome a contractual agreement to do so.

Id.

Reviewing the record that was before the district court, the First Circuit concluded that it was "bare of specific evidence regarding the extraordinary additional costs involved in litigating in Tennessee that were not foreseen by the

10

contracting parties when they entered into the Agreement. [The debtor] accepted some costs beforehand as a normal consequence of arbitrating in Tennessee." Id. In instructing the district court to order the Trustee to submit to arbitration in Tennessee, the court opined,

> Courts must give effect to . . . freely negotiated forum selection clauses. . . . [The parties'] choice of arbitral forum should have been honored by the district court. Courts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause.

Id. at 67.

For the same reason, this Court cannot alter the parties' agreement and finds that Plaintiff must be compelled to arbitrate this dispute in South Carolina.

Defendant also requests that this Court award it attorneys' fees for defending this action. It is clear that Plaintiff had no legitimate grounds to bring this action in this Court. In opposing the motion to dismiss, Plaintiff had to resort to reliance on the wrong legal standard as well as outdated and overruled case law. The frivolous nature of Plaintiff's actions, notwithstanding, this Court does not have the jurisdiction to award fees and costs. The attorneys fees provision in the Agreement, by its terms, allows for the award

11

of costs by the court or arbitration panel "[i]n any action, proceeding, or arbitration pursuant to Section 5.1 or 5.2." Agreement ¶ 5.3.  This is not an action or proceeding pursuant to either of those sections.  Accordingly, Defendant's request for the award of fees will be denied.[2]

A separate order consistent with this memorandum will issue.

/s/
_____
William M. Nickerson
Senior United States District Judge

Dated: May 5, 2005

---

[2] This is not to imply any bar to the arbitration panel awarding Defendant the costs attendant to defending this action. In fact, it is expected that it would do so. Defendant is undisputably the prevailing party as to this aspect of the litigation and the costs incurred here are certainly, "related to the controversy."  See Agreement ¶ 5.3.